# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| JESSIE JAMES WALTERS, JR.,<br>  Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br>  Defendant. | No. 3:16-cv-02113 (SRU) |

## RULING ON CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS

In the instant Social Security appeal, Jessie James Walters, Jr. moves to reverse the decision by the Social Security Administration (SSA) denying him disability insurance benefits. The Commissioner of Social Security moves to affirm the decision. Walters raises two arguments of error in the decision of the Administrative Law Judge ("ALJ"), arguing that the ALJ failed to properly weigh the medical opinion evidence, and that the ALJ inappropriately determined that Walters' own testimony was not completely credible. For the reasons set forth below, I agree with some of Walters' arguments regarding the ALJ's failure to properly weigh the medical opinion evidence, and I remand to the ALJ for reconsideration in light of this ruling. The ALJ appears to have discounted the opinions of Walters' treating physicians primarily based on the inconsistency of those opinions with the opinion of a single consulting physician, on which the ALJ placed great weight. Although that inconsistency might justify failing to accord controlling weight to the opinions of the treating physicians, it would be circular for that inconsistency to itself provide the basis for preferring the assessment of the consulting physician

1

over the assessments of Walters' treating physicians.[1]  Absent further explanation from the ALJ, I am unable to properly evaluate his preference for the consulting physicians' opinions.  I therefore grant Walters' motion to reverse or remand and deny the Commissioner's motion to affirm.

Because I remand for reconsideration of the medical opinion evidence, it is unnecessary for me to consider whether the ALJ properly evaluated Walters' credibility, which must, in any event, be determined in light of the appropriately weighted medical evidence.

**I.      Standard of Review**

The SSA follows a five-step process to evaluate disability claims. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).  First, the Commissioner determines whether the claimant currently engages in "substantial gainful activity".  *Greek v. Colvin*, 802 F.3d 370, 373 n.2 (2d Cir. 2015) (citing 20 C.F.R. § 404.1520(b)).  Second, if the claimant is not working, the Commissioner determines whether the claimant has a "'severe' impairment", *i.e.*, an impairment that limits his or her ability to do work-related activities (physical or mental). *Id.* (citing 20 C.F.R. §§ 404.1520(c), 404.1521).  Third, if the claimant does have a severe impairment, the Commissioner determines whether the impairment is considered "per se disabling" under SSA regulations.  *Id.* (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  If the impairment is not per se disabling, then, before proceeding to step four, the Commissioner determines the

---

[1] In addressing the opinions of some, but not all, of Walters' treating physicians, the ALJ occasionally relies on additional putative inconsistencies with the record, but I reject those aspects of the ALJ's analysis as well.  For clarity, it is also worth noting that the ALJ accorded "great weight" to not one, but two consulting physicians' opinions.  With respect to the second of those consulting physicians, however, the ALJ merely compounds the flawed basis of his decision to accord great weight to the first consulting physician's opinion, indicating that he mainly accorded weight to the second opinion due to its consistency with the first.

claimant's "residual functional capacity" based on "all the relevant medical and other evidence of record". *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4), (e), 404.1545(a)). "Residual functional capacity" is defined as "what the claimant can still do despite the limitations imposed by his [or her] impairment." *Id.* Fourth, the Commissioner decides whether the claimant's residual functional capacity allows him or her to return to "past relevant work". *Id.* (citing 20 C.F.R. §§ 404.1520(e), (f), 404.1560(b)). Fifth, if the claimant cannot perform past relevant work, the Commissioner determines, "based on the claimant's residual functional capacity", whether the claimant can do "other work existing in significant numbers in the national economy". *Id.* (20 C.F.R. §§ 404.1520(g), 404.1560(b)). The process is "sequential", meaning that a petitioner will be judged disabled only if he or she satisfies all five criteria. *See id.*

The claimant bears the ultimate burden to prove that he or she was disabled "throughout the period for which benefits are sought", as well as the burden of proof in the first four steps of the inquiry. *Id.* at 374 (citing 20 C.F.R. § 404.1512(a)); *Selian*, 708 F.3d at 418. If the claimant passes the first four steps, however, there is a "limited burden shift" to the Commissioner at step five. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). At step five, the Commissioner need only show that "there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." *Id.*

In reviewing a decision by the Commissioner, I conduct a "plenary review" of the administrative record but do not decide *de novo* whether a claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012); *see Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) ("[T]he reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."). I may reverse the Commissioner's decision "only if it is based upon legal error or if the factual findings

3

are not supported by substantial evidence in the record as a whole." *Greek*, 802 F.3d at 374–75. The "substantial evidence" standard is "very deferential", but it requires "more than a mere scintilla". *Brault*, 683 F.3d at 447–48. Rather, substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greek*, 802 F.3d at 375. Unless the Commissioner relied on an incorrect interpretation of the law, "[i]f there is substantial evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

## II. Facts

Walters was born in 1968, completed one year of college, and worked as a fire safety director and a building manager prior to the onset of his alleged disability. (Joint Stipulation of Facts, Doc. # 15 [hereinafter, "Facts at _"], at 1.)

Walters applied for Social Security Disability Benefits on November 6, 2013 and Social Security Income Benefits on November 8, 2013, alleging a period of disability beginning June 4, 2013. (Facts at 1.) Following denial of Walters' claims, he requested a hearing before an Administrative Law Judge ("ALJ") on March 5, 2014. (Facts at 1.) A hearing was held before ALJ Michael Friedman on June 2, 2015, subsequent to which ALJ Friedman found Walters not disabled within the meaning of sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (Facts at 1; Transcript of the Certified Administrative Record, Doc. # [hereinafter, "Tr. at _"], at 13.) Walters requested review of the ALJ's decision by the Appeals Council on August 18, 2015, and the Appeals Council denied Walters' request on October 25, 2016. (Facts at 1.)

Pursuant to the first four steps of the five-step evaluation process, the ALJ found, first, that Walters did not currently engage in substantial gainful activity (Tr. at 15); second, that Walters had the severe impairments of systemic lupus erythematosus, diabetes with peripheral neuropathy and a history of retinopathy, hand pain/reflex sympathetic dystrophy/diabetic hand

4

syndrome, cubital tunnel syndrome, mild cervical spondylosis, and rheumatoid arthritis (Tr. at 16); third, that Walters' severe impairments were not per se disabling (Tr. at 16-18); and, fourth, that Walters was unable to perform any past relevant work (Tr. at 24). However, pursuant to the fifth step of the five-step evaluation process, and based on a determination of Walters' residual functional capacity, the ALJ found that Walters was able to engage in light work with certain exceptions (Tr. at 18-24) and that Walters could therefore perform jobs existing in significant numbers in the national economy (Tr. at 24-25). Specifically, the ALJ found that Walters could perform the requirements of the jobs of Usher and Counter Clerk. (Tr. at 25.) Because the ALJ determined that Walters could perform jobs existing in significant numbers in the national economy, the ALJ found Walters not disabled within the meaning pertinent to the Social Security Act. (Tr. at 25.)

In determining Walters' residual functional capacity, the ALJ reviewed the medical opinions of Walters' treating orthopedic surgeon, Dr. Seneviratne, Walters' treating orthopedist, Dr. Diaz, Walters' treating rheumatologist, Dr. Lipschitz, and Walters' treating internist, Dr. Prabhakar, as well as consulting examiner Dr. Salon and non-examining consultant Dr. Putcha.[2] (Tr. at 18-24.) The ALJ also considered Walters' own testimony regarding his conditions and degree of impairment. (Tr. at 18-24.)

Dr. Seneviratne began treating Walters in March 2013, performed surgery on Walters in August 2013, and last saw Walters on January 29, 2014. (Facts at 2-5.) Dr. Seneviratne saw Walters repeatedly during that period. (Facts at 2-5.) The ALJ noted that Dr. Seneviratne had

---

[2] Although the ALJ noted the reports of Dr. Diaz, Walters' treating orthopedist (Tr. at 19-20), Dr. Diaz's observations or diagnoses are never discussed further by the ALJ, in analyzing either the weights accorded to the various medical opinions or Walters' ultimate degree of impairment.

5

opined in an October 2013 report that Walters' was precluded from doing any fine motor grasping, typing or any gross motor activities with his left hand. (Tr. at 22 (citing Tr. at 255).) In such report, Dr. Seneviratne stated that it was possible that further joints in Walters' body would be affected by his systemic lupus condition, and thus that it was "more than reasonable to expect [Walters] to be permanently disabled". (Tr. at 255.) The ALJ also noted a February 6, 2014 opinion from Dr. Seneviratne, in which the doctor noted that Walters was limited to standing or walking for less than two hours and sitting for less than six hours in an eight-hour workday. (Tr. at 22 (citing Tr. at 261).) In such report, Dr. Seneviratne also stated that Walters was unable to lift any weight. (Tr. at 260.) The ALJ gave Dr. Seneviratne's opinions only "partial weight", apparently giving the February 2014 opinion something less than controlling weight, because such opinion was "inconsistent with the objective medical record". (Tr. at 22.) In explaining his finding that Dr. Seneviratne's opinion was inconsistent with the record, the ALJ cited exclusively to Dr. Salon's opinion. (Tr. at 22.)

Dr. Lipschitz began treating Walters in October 2013, saw Walters again on May 4, 2015, and sent Walters for multiple intervening x-rays. (Facts at 5-7; Tr. at 334-40.) On May 4, 2015, Dr. Lipschitz diagnosed Walters with an overlap of lupus and rheumatoid arthritis, and, in a "Lupus Impairment Questionnaire" filled out on the same day, Dr. Lipschitz observed evidence of malar rash, photosensitivity, oral ulcers, non-erosive arthritis, abnormal laboratory tests that documented anti-DNA in abnormal titer, positive findings of antiphospholipid antibodies, and a positive ANA test. (Facts at 6-7; Tr. at 278-82, 340.) In the Lupus Impairment Questionnaire, Dr. Lipschitz opined that Walters would only be able to sit for less than one hour and stand or walk for less than one hour in an eight-hour workday. (Facts at 7-8; Tr. at 280.) Dr. Lipschitz also opined that, with either hand, Walters could "never/rarely" lift up to five pounds, grasp,

6

turn, or twist objects, perform fine manipulations, or reach, that Walters would have attention and concentration problems for one-third to two-thirds of an eight-hour workday, and that Walters would miss work more than three times a month due to his impairments or treatment. (Facts at 8; Tr. at 22, 280-82.) The ALJ accorded Dr. Lipschitz's opinions little weight, explaining that the symptoms Dr. Lipschitz had recorded in the Lupus Impairment Questionnaire were insufficient to render Walters as disabled as Dr. Lipschitz had indicated in the same questionnaire. (Tr. at 23.) The ALJ also observed that the degree of disability Dr. Lipschitz indicated in the questionnaire was inconsistent with Dr. Seneviratne's observations in October 2013 and Dr. Salon's observations in January 2014 (Tr. at 23 (citing Tr. at 237-38, 312)) and Walters' own testimony that he could use a tablet (Tr. at 23).

Dr. Prabhakar began treating Walters in December 2000, and last saw him on March 21, 2015. (Facts at 9.) The ALJ noted that Dr. Prabhakar purportedly saw Walters four to eight times per year during that interval, but observed that Dr. Prabhakar provided no diagnostic or treatment records from that period. (Tr. at 23.) The ALJ did not document any attempts to contact Dr. Prabhakar in his decision, but the Commissioner appears to have attempted to contact Dr. Prabhakar twice in January 2014 and received no response to either attempt. (Tr. at 349-50.) Dr. Prabhakar did provide a "Multiple Impairment Questionnaire" dating from June 2015, in which he indicated that Walters would be unable to push, pull, kneel, bend, or stoop at work on a sustained basis (Tr. at 347) and that Walters would need to be absent from work "much" more than three times a month (Tr. at 347). The ALJ gave Dr. Prabhakar's opinions little weight, justifying his decision on the lack of treatment records from Dr. Prabhakar in the record, Dr. Prabhakar's failure to fill out portions of the Multiple Impairment Questionnaire, and the

7

inconsistency between Dr. Prabhakar's June 2015 opinion and Dr. Salon's January 2014 report. (Tr. at 23.)

Dr. Salon examined Walters on January 30, 2014, at the request of the Social Security Administration. (Facts at 9.) Dr. Salon noted Walters' history of diabetes, lupus, migraines, left-hand problems and other joint issues. (Tr. at 239.) Dr. Salon observed a slow but normal gait, mild difficulty walking, the ability to perform a full squat, and a normal stance. (Tr. at 237.) During the examination, Walters used no assistive devices, was able to rise from a chair without difficulty, and needed no help changing for the examination or getting on or off the examination table. (Tr. at 237.) Dr. Salon's opinion stated that, based on Walters' history and Dr. Salon's own examination, there were no findings supporting an inability for Walters' to sit or stand. (Tr. at 239.) Dr. Salon did, however, acknowledge that Walters would be limited in his ability to climb, push, pull, or carry heavy objects. (Tr. at 239.) The ALJ gave Dr. Salon's opinion great weight, explaining simply that Dr. Salon "is an examining physician and [her] statement is consistent with the objective medical record". (Tr. at 22.)

Dr. Putcha did not examine Walters, but provided a consulting opinion on February 24, 2014, stating that Walters' left hand appeared to have diminished function, but that Walters did not have a severe impairment of major joints in the lower limbs, had normal function of the right and was able to ambulate independently. (Facts at 10.) Dr. Putcha opined that Walters could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand for about six hours and sit for about six hours in an eight-hour workday, and had no pushing, pulling, or postural limitations. (Facts at 11-12.) The ALJ appears to have accorded great

weight to Dr. Putcha's opinion because the opinion was "more consistent with the record as a whole, including the portion of Dr. Salon's opinion that [was] given great weight". (Tr. at 23.)

**III.  Discussion**

In his appeal, Walters asserts two categories of error by the ALJ:  First, Walters argues that the ALJ failed to properly weigh the medical opinion evidence. (Pl.'s Br. at 1-9.) Specifically, Walters contends that the ALJ inappropriately declined to give controlling weight to the opinions of treating physicians Seneviratne, Lipschitz, and Prabhakar, pursuant to the "treating physician rule", and contends that, to the extent the treating physicians' opinions were not given controlling weight, the ALJ failed to properly consider the amount of non-controlling weight to give the treating physicians' opinions.  Second, Walters argues that the ALJ inappropriately determined that Walters' own testimony was not completely credible. (Pl.'s Br. at 9-12.)  Regarding Walters' first claim of error, for the reasons articulated below, I agree that the ALJ failed to properly weigh the medical opinion evidence, or, at least failed to properly articulate the reasons for the weights accorded.  I therefore remand to the ALJ for reconsideration of those aspects of his opinion in light of this decision.  Moreover, because claimant credibility determinations must be made in light of the medical evidence, it is unnecessary at this point for me to address the ALJ's assessment of Walters' credibility, which is also best reconsidered by the ALJ on remand.

A.  <u>Controlling weight was inappropriately denied to some of Walters' treating physicians</u>

"The treating physician rule provides that an ALJ should defer to 'to the views of the physician who has engaged in the primary treatment of the claimant'", but need only assign those opinions "controlling weight" if they are "well-supported by medically acceptable clinical and

9

laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record".[3] *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(c)(2)). Where the opinions of treating physicians are more favorable to the claimant than the opinions of other consulting physicians, the ALJ is permitted to find the treating physicians' opinions inconsistent with substantial evidence in the record, and hence not entitled to controlling weight. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence." (citation omitted)). The standard for "substantial evidence" is "very deferential", *Brault*, 683 F.3d at 447–48, and "conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

1. *Dr. Seneviratne*

Although the ALJ acknowledged that Dr. Seneviratne's opinion regarding Walters' fingering was consistent with the record, the ALJ determined that Dr. Seneviratne's opinion regarding Walters' functional abilities was inconsistent with evidence provided by Dr. Salon. (Tr. at 22.) The ALJ recited more than a mere scintilla of evidence provided by Dr. Salon that was inconsistent with Dr. Seneviratne's opinions regarding Walters' functional abilities. For example, the ALJ noted that, although Dr. Seneviratne had, in February 2014, "opined the claimant could sit for less than six hours per day" and "could stand or walk for less than two

---

[3] Originally a rule devised by the federal courts, the treating physician rule is now codified by SSA regulations, but "the regulations accord less deference to unsupported treating physician's opinions than d[id] [the Second Circuit's] decisions." *See Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).

10

hours per day" (Tr. at 22 (citing Tr. at 261)), Dr. Salon had only a week earlier observed that, among other indicia of normal functioning, Walters had a normal gait, had "only mild difficulty walking on his heels and toes", could "engage in a full squat", and in sum observed that there were "no objective findings to support the fact that [Walters] will be restricted in his ability to sit or stand" (Tr. at 22 (citing Tr. at 237-39)).

Walters attempts to undermine Dr. Salon's opinion by arguing that Dr. Salon was not provided with his treatment records or test results. (Pl.'s Br. at 6-7.) A consulting physician is required to be provided with "any necessary background information", 20 C.F.R. § 416.917, but the Commissioner correctly points out that such requirement does not create a strict obligation to provide medical records to the consulting physician, *see, e.g.*, *Johnson v. Colvin*, 2015 WL 6738900, at *15 (E.D.N.Y. Nov. 4, 2015). As a preliminary matter, Dr. Salon did obtain substantial background information on Walters' medical history. (Tr. at 236-39 (noting, for example, Walters' prior complaints, treatments, and histories of lupus, diabetes, and migraines).) Walters objects that Dr. Salon's observations of a "history" of various ailments cannot be credited as sufficiently informative background information regarding those ailments, but no such stringent standard exists. *See Mayor v. Colvin*, 2015 WL 9166119, at *18 n.24 (S.D.N.Y. Dec. 17, 2015). Walters' citation to *Burgess v. Astrue* is unavailing, because, in that case, the consulting examiner—who had not actually examined the plaintiff—provided testimony that was contradicted by a critical MRI, which the consulting examiner had not reviewed. 537 F.3d 117, 130-32 (2d Cir. 2008). Walters has failed to indicate any information contained in the MRI that would have contradicted, or even cast doubt on, any of Dr. Salon's findings. Moreover, Dr. Salon did examine Walters, and, the specific clinical findings made by Dr. Salon, reviewed

11

above, by themselves stand as substantial evidence inconsistent with Dr. Seneviratne's opinion, independent from any information the MRI might have provided.[4]

Accordingly, the ALJ did not err in finding Dr. Seneviratne's opinion inconsistent with substantial evidence in the record—namely, the contemporaneous opinion provided by Dr. Salon—and thus did not err in declining to accord Dr. Seneviratne's opinion controlling weight.

2. *Drs. Lipschitz and Prabhakar*

I can discern three reasons that the ALJ declined to assign binding weight to Dr. Lipschitz's May 2015 opinion. First, the ALJ observed that, although Dr. Lipschitz had indicated that Walters could only work in a seated position for less than one hour out of an eight-hour day and could only work from a standing or walking position for less than one hour out of an eight-hour day, such degree of disability was not supported by the symptoms Dr. Lipschitz noted for Walters in the Lupus Impairment Questionnaire. (Tr. at 22-23 (citing Tr. at 279-80).) Second, the ALJ noted that the degree of disability Dr. Lipschitz had described was not consistent with Dr. Salon's above-quoted description of Walters' functional abilities. (Tr. at 23 (citing Tr. at 237-38).) Third, the ALJ noted that Walters' own statements regarding his daily activities are inconsistent with Dr. Lipschitz's description of Walters' total impairment, inasmuch as Dr. Lipschitz stated that Walters could never or rarely use his hands for fine manipulations, but Walters had admitted to the regular use of a tablet. (Tr. at 23.)

---

[4] I note that I do not hold more than that Dr. Salon's clinical findings stand as sufficiently inconsistent with Dr. Seneviratne's opinion to not give Dr. Seneviratne's opinion *controlling* weight. Dr. Salon's failure to review the MRI is cause for more concern to the extent this resulted in the ALJ's failure to accord any significant weight to the opinion of any doctors who did review the MRI or other treatment records or test results.

12

The ALJ's primary justification for not according Dr. Prabhakar's June 2015 opinion controlling weight was the observation that Dr. Prabhakar had failed to cite to or provide any treatment or diagnostic records to support his dire conclusions that Walters was completely unable to engage in work requiring pushing, pulling, kneeling, bending and stooping, that Walters would need to be absent from work "much" more than three times a month, and that Walters would experience symptoms severe enough to interfere with his ability to concentrate. (Tr. at 23 (citing Tr. at 341-48).)

None of the foregoing justifications, individually or collectively, provides sufficient grounds for rejecting Drs. Lipschitz's and Prabhakar's opinions. To the extent the ALJ thought that Dr. Lipschitz described insufficient symptoms to produce the degree of disability Dr. Lipschitz diagnosed, that represented a gap in the record for the ALJ to explore, not a legitimate final conclusion left to the ALJ's discretion. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him.") (quoting *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)).[5] The absence of treatment or diagnostic records from Dr. Prabhakar also constituted a gap in the record that triggered the ALJ's duty to develop the record and seek additional information *sua sponte*. *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). Although the ALJ also noted that the treating

---

[5] It is also noteworthy that, in itemizing the symptoms noted by Dr. Lipschitz that purportedly failed to support the degree of disability assessed by Dr. Lipschitz, the ALJ did not accurately acknowledge the full list of symptoms noted by Dr. Lipschitz. (*See* Tr. at 23 (failing to note the oral ulcers or several abnormal laboratory test results documenting anti-DNA in abnormal titer, positive findings of antiphospholipid antibodies, and a positive ANA test).)

13

physicians' opinions from May and June 2015, respectively, differed from medical opinions from January 2014 and October 2013 (Tr. at 23 (citing Tr. at 237-48, 312)), that observation merely highlighted the ALJ's obligation to seek further information or explanation from Drs. Lipschitz and Prabhakar. "[I]f contacted, the treating physician[s] . . . 'might have been able to provide a medical explanation for why [Walters'] condition deteriorated over time'." *Gabrielsen v. Colvin*, 2015 WL 4597548, at *6 (S.D.N.Y. July 30, 2015) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).[6] The Commissioner points out that two attempts were made to contact Dr. Prabhakar in January 2014 to seek treatment notes, but no response was received, and argues that effort somehow fulfilled the duty of the ALJ (who had presumably not yet been assigned to a hearing that did not yet exist) to independently develop the record. (Def.'s Br. at 5-6.) Even if I were to credit the ALJ for such prior efforts, the ALJ declined to give Dr. Prabhakar's opinions controlling weight based on problems in Dr. Prabhakar's June 2015 opinion. Attempts to contact Dr. Prabhakar from a year and a half earlier cannot constitute sufficient efforts to develop information contained in a June 2015 opinion. Finally, the ALJ deemed Dr. Lipschitz's opinion regarding Walters' inability to use his hands for fine motor manipulations inconsistent with Walters' statement that he uses a tablet. The ALJ described Walters' statement as an admission that he "uses a computer" (Tr. at 23), but as anyone who has used a tablet recently can attest, one of their chief virtues is the simplicity and ease of use of their touchscreen, as compared to a traditional computer. Walters' ability to elicit some functionality

---

[6] The ALJ's citation to a putative inconsistency between Dr. Seneviratne's 2013 opinion and Dr. Lipschitz's 2015 opinion is particularly misplaced, given that Dr. Seneviratne had specifically noted in his earlier opinions that Walters' condition was likely to deteriorate. (Tr. at 255.)

out of a tablet cannot serve as the core basis for rejecting a treating physician's assessment of a lack of fine motor abilities.

The ALJ has failed to identify evidence in the record that appropriately justifies his decision to not accord the opinions of Drs. Lipschitz and Prabhakar controlling weight. Accordingly, on remand, the ALJ must either provide additional explanation of his decision not to accord the opinions controlling weight, or must accord the opinions such weight.

B. <u>The ALJ did not provide good reasons for the relative weights assigned to the opinions of the treating and consulting physicians</u>

When the ALJ "do[es] not give the treating source's opinion controlling weight", he must "apply the factors listed" in SSA regulations, 20 C.F.R. § 404.1527(c)(2), including "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist". *Selian*, 708 F.3d at 418. After considering those factors, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion", *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004), and provide "good reasons" for the weight assigned. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). But "where the ALJ's reasoning and adherence to the regulation are clear", the ALJ need not "slavish[ly] recite[] each and every factor" listed. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order).

Although I have ruled that the ALJ was not obliged to give controlling weight to Dr. Seneviratne's opinion, the ALJ was still obliged to give appropriate consideration to the nature of the less-than-controlling weight that such opinion might be accorded. Similarly, to the extent the opinions of Drs. Lipschitz and Prabhakar were not given controlling weight, appropriate

15

consideration must still have been given to the lesser weight that might be accorded their opinions. The ALJ does not need to expressly recite every factor provided for consideration contained at 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6), but the record must at least be sufficiently developed to permit me to "glean the rationale of [the] ALJ's decision", *Depoto v. Colvin*, 2017 WL 417196, at *5 (D. Conn. Jan. 31, 2017) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013)).

In this case, the only rationale I can discern behind the ALJ's decision to accord Dr. Seneviratne's opinion little (or perhaps zero[7]) weight is the inconsistency of Dr. Seneviratne's opinion with Dr. Salon's opinion. (Tr. at 22.) Although inconsistency between a treating physician's and consulting physician's opinions can represent a sufficient inconsistency to justify not according binding weight to the treating physician's opinion, *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("[T]he treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."), it would be circular to allow that same inconsistency, by itself, to determine the relative weight to be accorded the consulting and treating physicians' respective opinions. Such relative weighting decisions must rely on some external evidence or additional factors. *See Mayor*, 2015 WL 9166119, at *18 (noting that "opinions from a one-time examining source are generally entitled to less weight than a treating specialist" but that "[a]n ALJ may give greater weight to a consultative examiner's opinion . . . if

---

[7] The ALJ has stated that Dr. Seneviratne's opinion was accorded partial weight. (Tr. at 22.) That appears to be a product of the ALJ's decision to accord some amount of weight to Dr. Seneviratne's opinion regarding Walters' hand fingering abilities, but lesser weight to the other portions of Dr. Seneviratne's opinion. Because the ALJ is not more specific, I cannot confirm whether the ALJ accorded any weight to the additional portions of Dr. Seneviratne's opinion that the ALJ deemed inconsistent with Dr. Salon's opinion.

the consultative examiner's conclusions are more consistent with the underlying medical evidence"). I can discern no factors that the ALJ relied on (and certainly none that the ALJ clearly indicated he relied on) in favoring Dr. Salon's opinion over Dr. Seneviratne's opinion.

Similarly, with respect to the opinions of Drs. Lipschitz and Prabhakar, although the ALJ did provide additional reasons for discrediting their opinions, I have already rejected those explanations, so we are likewise left with the bare inconsistency of those opinions with Dr. Salon's report. Absent any explanation, I am left wondering why the length of the various treating physicians' relationships with Walters, or their expertise in their respective specialty areas, did not earn them additional weight compared to Dr. Solano. *See Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008).[8]

The Commissioner's only argument that due consideration was given in deciding to afford little weight to the treating physicians is the suggestion that the ALJ "noted that Drs. Seneviratne, Lipschitz, and Prabhakar were acceptable medical sources who had treated [Walters] over a period of time . . . and were specialists". (Def.'s Br. at 9.) I note that the Commissioner's citation is optimistic, because the referenced observations by the ALJ are not framed in his opinion in a way that suggests that the pertinent elements were considered in the relative weighing of medical opinions. In any event, the Commissioner's argument is misplaced because the treating physicians' status as acceptable medical sources, their specialties, and their

---

[8] At one point, the ALJ does briefly note that the opinions of both non-examining consultant Dr. Putcha, who otherwise plays little role in the ALJ's explanation of his decision, and consultant Dr. Salon were given great weight because they are "more consistent with the record as a whole"—presumably in contrast to the opinions of Walters' treating physicians. (Tr. at 23.) But, aside from references to the consulting physicians' own opinions (Tr. at 23), which I have already ruled cannot be the sole basis for completely rejecting the treating physician's opinions, the ALJ does not provide further detail regarding which other aspects of the record were more consistent with the consulting physicians' opinions.

17

treatment of Walters over a period of time would each appear to be arguments for according significant weight to their opinions. What is missing is any reference to statements by the ALJ that support not granting weight to the treating physicians' opinions as compared with the opinions of the consulting physicians.

On remand, the ALJ must either provide additional explanation of his decisions regarding the relative weights to assign the various medical opinions before him, or must reverse his decision regarding such relative weights.

## IV. Conclusion

I deny the Commissioner's motion to affirm, and grant Walters' motion to reverse to the extent that it asks that I vacate the decision of the Commissioner. I remand for further development of the record and consideration of the weight to be accorded the various medical opinions provided to the ALJ, consistent with the foregoing reasoning.

The Clerk shall enter judgment, effect remand to the Commissioner, and close the case. The Clerk is further instructed that, if any party subsequently appeals to this court the decision made after remand, that Social Security appeal shall be assigned to me (as the District Judge who issued the ruling that remanded the case).

So ordered.

Dated at Bridgeport, Connecticut, this 11th day of June 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge